1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

Attorneys for Plaintiff Victoria Berghuis
and others similarly situated

ADDITIONAL COUNSEL LISTED ON NEXT PAGE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

VICTORIA BERGHUIS, on behalf of
herself and others similarly situated,

Plaintiff,

vs.

FORD MOTOR COMPANY, INC.,
and DOES 1 to 10,

Defendants.

Case No. **'22CV0871 JLS  KSC**

**CLASS ACTION**

**COMPLAINT FOR:**

**VIOLATIONS OF CALIFORNIA
BUSINESS AND PROFESSIONS
CODE SECTION 17200, *et seq.***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue
15th Floor Los Angeles, CA 90024
Telephone: (310) 432-8492

Manny Starr (319778)
manny@frontierlawcenter.com
Adam Rose (210880)
adam@frontierlawcenter.com
**Frontier Law Center**
23901 Calabasas Road, #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Additional Attorneys for Plaintiff
Victoria Berghuis and others similarly situated

1    Plaintiff Victoria Berghuis ("Plaintiff"), individually and on behalf of all
2    other California citizens similarly situated, brings this action against Defendant
3    Ford Motor Company, Inc. ("Defendant" or "Ford"), upon information and belief,
4    except as to her own actions, the investigation of her counsel, and the facts that are
5    a matter of public record, and alleges as follows:

6    **INTRODUCTION**

7    1.    This consumer class action arises out of Ford's failure to properly
8    identify and pay for the diagnosis, repair, and replacement of the transmission in
9    Class Vehicles, as defined below, for 15-years or 150,000-miles, pursuant to
10   California Code of Regulations ("CCR") Title 13, Section 1962.1, 2035, 2037 and
11   2038, ("California Emissions Warranty"), relating to Partial Zero Emissions
12   Vehicles and Super Ultra Low Emissions Vehicles, for which Ford has received a
13   .2 Zero Emissions Credit from the California Air Resources Board. These vehicles
14   are collectively referred to as "PZEV" vehicles.

15   2.    Plaintiff's claims relate specifically to all vehicles distributed by Ford
16   that are PZEV vehicles and for which Ford does not provide 15-years or 150,000-
17   miles coverage relating to the transmission ("Class Vehicles").

18   3.    Pursuant to the California Emissions Warranty, defects which
19   increase regulated emissions in PZEV vehicles, such as the Class Vehicles, shall
20   be covered under warranty for 15-years or 150,000-miles.

21   4.    As will be detailed further below, the California Air Resources Board
22   has determined that defects which cause illumination of the MIL are covered
23   under the 15-years or 150,000-miles California Emissions Warranty. This is
24   because, pursuant to Title 13, Section 1968.2, the MIL is not supposed to
25   illuminate unless the vehicle's onboard diagnostic system ("OBDII" or "OBD2")
26   has detected a defect which increases regulated emissions.

27   5.    Furthermore, defects which cause illumination of the MIL would
28   result in the vehicle failing a California smog check. Thus, defects which cause a

CLASS ACTION COMPLAINT

vehicle to fail a California smog check also increase regulated emissions and should be covered under the 15-years or 150,000-miles California Emissions Warranty.

6.     Transmission defects in Class Vehicles increase regulated emissions, cause the MIL to illuminate, and cause the vehicle to fail a California smog check. Therefore, the transmission in Class Vehicles should be covered by the California Emissions Warranty.

7.     As a result of Ford not providing proper warranty coverage for the transmission in Class Vehicles, Plaintiff and members of the Class and Subclasses have and are continuing to pay out of pocket for repairs that should be covered under the California Emissions Warranty. Further, as a result of Ford not providing proper warranty coverage for the transmission in Class Vehicles, Plaintiff and the members of the Class and Subclasses have and are continuing to suffer damage as a result of purchasing or leasing Class Vehicles with a deficient warranty which was worth less than the warranty they were legally entitled to at the time of purchase or lease.

8.     Ford has failed to extend California Emissions Warranty coverage to the transmission in Class Vehicles as required by the CCR. As explained herein, this is an unlawful and unfair business practice.

## BACKGROUND

9.     For decades, Ford has been in the business of importing and distributing Ford vehicles to the State of California, with the intent to sell Ford vehicles to consumers in California. As such, Ford vehicles have been subject to state and federal regulations regarding both emissions standards and regarding Ford's obligations to provide consumers with warranties relating to emissions related parts.

10.     California Code of Regulations section 1962.1, 2035, 2037, and 2038, requires that, for PZEV vehicles for which PZEV credits are provided, all

defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate (as defined in CCR section 2037), all defects in materials or workmanship that would increase emissions, and all defects in materials or workmanship that would result in the vehicle not being able to pass a California smog check are warranted for *15-years* or *150,000-miles*, whichever occurs first (italics added), pursuant to the California Emissions Warranty. The 15-year warranty period is reduced to 10 years or 150,000-miles only for "a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device)." The Class Vehicles are all defined as PZEV vehicles pursuant to California Code of Regulations 1962.1.

11.    Pursuant to the California Code of Regulations, Ford is required to cover all parts that satisfy Section 1962.1, 2035, 2037, and 2038 as being emissions related parts, for 15-years or 150,000-miles, unless the emissions part is a battery or other zero emission storage device, wherein the warranty is 10 years/150,000-miles.

12.    Ford fails to comply with these statutory requirements by failing to provide 15-years or 150,000-miles California Emissions Warranty coverage to Class Vehicles for transmission defects which cause illumination of the MIL, which cause an increase in regulated emissions, and/or which would cause a Class Vehicle to fail a smog check.

13.    Ford is engaged in a nefarious scheme to limit its warranty exposure under California's emissions warranty requirements in violation of California emissions law by unilaterally defining and wrongfully limiting the parts that should properly be identified as parts covered by the California Emissions Warranty and covered for 15-years or 150,000-miles under the CCR.

14.    Section 1962.1 requires that, relating to Class Vehicles, any warranted part, as defined by the CCR, that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, increase emissions or that

would result in the vehicle not being able to pass a California smog check must be covered for 15-years or 150,000-miles. However, Ford's California Emissions Warranty for the Class Vehicles identifies only a handful of emissions parts that Ford contends qualify for the California Emissions Warranty's 15-year/150,000-mile warranty coverage. That list, generated by Ford, for its own financial benefit to save warranty costs, is woefully inadequate and incomplete and fails to identify, or provide extended warranty coverage for, *all* of the emissions related parts that, in fact, qualify for 15-year/150,000-mile coverage under Section 1962.1.

15.    By narrowly self-defining the parts that are required to be covered under the California Emissions Warranty, Ford is able to reduce the amount of money that it spends on warranty-related repairs, knowing that most if not all dealerships or consumers will not investigate or understand what components should actually and correctly be covered under the California Emissions Warranty as required by the California Code of Regulations.

16.    As a result of Ford's conduct, Plaintiff and members of the Class have paid and are continuing to pay out of pocket for repairs that should be covered under the California Emissions Warranty. As a further result of Ford's conduct, Plaintiff and members of the Class purchased or leased vehicles with warranties which were less valuable than the warranties they were legally entitled to.

17.    Plaintiff's theory does not depend on the premise that CARB was deceived by the information that Ford submitted, or that CARB ever expressed a concern about Ford's classification of components as being covered by the California Emissions Warranty. Plaintiff is not accusing CARB of mismanagement or blaming CARB for Ford's inaccuracy. Ford alone is responsible for selecting and identifying to CARB the parts that Ford has unilaterally identified as being covered by the California Emissions Warranty, as part of its application for vehicle certification. That list may be correct as far as

1    CARB may know. But, as Plaintiff alleges, the list of parts Ford submitted to

2    CARB was incomplete, as evidenced by Plaintiff's own experience.

3                              **JURISDICTION AND VENUE**

4        18.    This Court has original jurisdiction over the subject matter of this

5    action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class

6    are citizens of a state different from that of Ford; and (ii) aggregating the claims of

7    individual Class members, the total matter in controversy exceeds the sum or

8    value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. §

9    1332(d)(5) does not apply because (i) Ford is not a state, state official, or other

10   governmental entity against whom the Court may be foreclosed from ordering

11   relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

12       19.    On information and belief, for model years 2014–2017 alone,

13   approximately 91,213 Ford PZEVs were sold (as new vehicles) to California

14   dealers and received .2 Zero Emissions Credit from CARB, and there are

15   approximately an additional 178,018 Ford PZEV vehicles that received .2 Zero

16   Emissions Credit from CARB in prior model years.

17       20.    This Court has personal jurisdiction over Ford because Ford has

18   sufficient minimum contacts with California, having intentionally availed itself of

19   the California market so as to render the exercise of jurisdiction over it by this

20   District Court consistent with traditional notions of fair play and substantial

21   justice.

22       21.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because

23   Ford conducts business within the State of California, has failed to designate with

24   the office of the California Secretary of State a principal place of business in

25   California, and a substantial part of the events giving rise to the claims alleged

26   herein occurred in this District.

27       22.    Further, this Court has jurisdiction over this matter and venue is

28   proper in this Court because the facts and theories of liability in this action are

CLASS ACTION COMPLAINT

separate and distinct from *Ford Motor Co. DPS6 Powershift Transmission*, MDL No. 2814, as follows.

23. The actions in MDL No. 2814 involve common factual questions arising out of allegations that the DPS6 PowerShift transmission installed in certain Ford Fiesta and Ford Focus vehicles is defective and negatively affects the drivability, safety, and useful life of the vehicles. *See In re Ford Motor Co. DPS6 PowerShift Transmission Prods. Liab. Litig.*, 289 F. Supp. 3d 1350, 1352-53 (J.P.M.L. 2018). The instant action does not involve the same factual issues.

24. Plaintiff's action does not concern any particular transmission defect, does not concern "driveability" problems, and is not limited to any particular vehicle model. Instead, this action concerns Ford's failure to provide compliant California Emissions Warranty coverage for *any* transmission defect in *any* Class Vehicle. Thus, MDL No. 2814 relates to Ford's obligations with respect to defective parts, while this action relates to Ford's warranty obligations and for failure to properly cover the transmission under the California Emissions Warranty.

25. Further, MDL No. 2814 is limited to defects which present themselves during the standard 5-year powertrain warranty period, or, at best, for a maximum of 10-years as provided by the Ford Powershift Settlement approved in Case No. 2:12-cv-08388-AB-FFM (C.D. Cal.). This case, however, relates to warranty coverage which extends to defects which occur pursuant to the 15-year California Emissions Warranty. The MDL litigation does not address this issue at all.

26. Further, whereas the common factual questions described by the MDL order are those "arising out of allegations that the DPS6 PowerShift transmission installed in certain Ford Fiesta and Ford Focus vehicles is defective," this action focuses on Ford's failure to provide compliant warranty that covers the required parts under the California Emissions Warranty, including at the time of

purchase or lease of a Class Vehicle, irrespective of whether or not a defect in the transmission ever presents itself. Thus, Class members are entitled to a remedy regardless of whether they experienced a transmission defect. MDL No. 2814, on the other hand, relates only to those individuals who have experienced an alleged defect in their vehicle's Powershift Transmission.

27.    This action relates to very specific warranty obligations relating to PZEV and Partial Zero Emissions Vehicles and Super Ultra Low Emissions Vehicles, which MDL No. 2814 does not address at all.

## PARTIES

28.    Plaintiff Victoria Berghuis ("Berghuis") is, and at all times relevant hereto has been, an individual. At all times relevant, Plaintiff resided at 827 Mason Road, Monterey, California 93944, in the county of Monterey.  The repairs that give rise to this action were made to Berghuis' vehicle in San Diego County, California.

29.    Defendant Ford was and is, upon information and belief, a Delaware corporation, headquartered in Dearborn, Michigan, doing business in the State of California. Ford sells PZEV Vehicles, including the Class Vehicles, in the State of California. Ford sells Partial Zero Emissions Vehicles and Hybrid Vehicles, including the Class Vehicles, in the State of California. On information and belief, Defendant Ford is not a citizen of California.

30.    The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Ford at all relevant times.

31.    Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.

1    Plaintiff will amend this Complaint to set forth the true names and capacities of

2    said Defendants, along with the appropriate charging allegations, when the same

3    have been ascertained. Each reference in this Complaint to "Ford" or "Defendant"

4    is also a reference to all Defendants sued as Does 1 through 10.

5        32.    Plaintiff reserves the right to expand, limit, modify, or amend these

6    allegations at any time, based upon, *inter alia*, changing circumstances and/or new

7    facts obtained during discovery.

8                          **SUBSTANTIVE ALLEGATIONS**

9        33.    Berghuis purchased and is the owner of a 2014 Ford Focus, VIN

10   1FADP3K28FL185844 ("Berghuis Vehicle"). The Berghuis Vehicle at all times

11   herein relevant was purchased by Berghuis in the state of California and registered

12   in the state of California.

13       34.    On December 28, 2021, at 77,283 miles, the Berghuis Vehicle was

14   presented for repairs to North County Ford, located at 450 West Vista Way, Vista,

15   California 92083. Vista is located San Diego County. North County Ford is a Ford

16   Authorized repair facility. Berghuis complained that the Berghuis Vehicle,

17   "Hesitates and jerks when trying to go up in speed – customer believes it may be a

18   transmission issue." The work order relating to the repair attempt indicated a

19   $180.00 diagnostic fee. Ford refused to cover the repair under the California

20   Emissions Warranty, even though the defect increased regulated emissions, the

21   vehicle had been in service less than 15-years, and the vehicle had been driven

22   less than 150,000-miles. Thus, Berghuis paid the diagnostic fee out-of-pocket, and

23   was advised that she would have to pay for repairs to the transmission.

24       35.    California Code of Regulations Section 1962.1, California Code of

25   Regulations Section 2035, *et seq*., California Code of Regulations Section 2037, *et*

26   *seq*., and California Code of Regulations Section 2038, *et seq*., establish the

27   minimum warranty coverage that Ford is required to provide to consumers relating

28

CLASS ACTION COMPLAINT

to Ford Partial Zero Emissions Vehicles and Hybrid Vehicles that Ford imports and distributes in California.

36.    Pursuant to California Code of Regulations Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

37.    Furthermore, California Code of Regulations Section 2037(b) states, in relevant part: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)    Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)    Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)    Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

38.     With regard to Partial Zero Emissions Vehicles, California Code of Regulations 1962.1 extends the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000-miles, whichever occurs first, except that the time period is to be 10 years for a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device). Section 1962.1(D) states, in relevant part:

"(D) *Extended Warranty*. Extend the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000-miles, whichever occurs first except that the time period is to be 10 years for a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device)."

39.     In short, the California Code of Regulations section 1962.1 requires that, for PZEV vehicles, all defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate [as defined in the California Code of Regulations section 2037(b)], that would increase the vehicle's emissions, or that would result in the vehicle not being able to pass a California smog check are warranted for *15-years* or *150,000-miles*, whichever occurs first (italics added). The 15-year warranty period is reduced to 10 years or 150,000-miles only for batteries or zero-emission energy storage devices.

40.     Under Sections 1962.1, 2035, 2037, and 2038 of the California Code of Regulations, it is clear that this repair to Plaintiff's vehicle should have been covered for 15-years or 150,000-miles. This is because the defect increased regulated emissions, illuminated the MIL, and would have caused Plaintiff's vehicle to fail a smog test.

41.     Specifically, Plaintiff's vehicle was hesitating and jerking on acceleration as a result of a transmission defect. Hesitating and jerking on

acceleration are indicia of a slipping transmission. This condition increases fuel consumption and increases regulated emissions.

42.    Thus, the defective condition of the Berghuis Vehicle, as described by Berghuis on the December 28, 2021 repair attempt, does, in fact, increase regulated emissions.

43.    Furthermore, it is Plaintiff's information and belief that the conditions described relating to the Berghuis vehicle causes illumination of the MIL and would cause the Berghuis vehicle to fail a California smog check.

44.    When a part that is, or should be, covered under the California Emissions Warranty fails as described herein, it also fails to perform as described in the vehicle's application for certification under section 2037(b)(2), as further described below.

45.    Ford has acted as alleged herein in an effort to reduce the amount of money that it spends on warranty-related repairs, knowing that most if not all dealerships or consumers will not investigate or understand what components should actually be covered under the California Emissions Warranty. Ford's conduct is part of a systematic effort by Ford to avoid complying with California law. If Ford complied with the terms of California law by properly identifying all parts that are covered under the California Emissions Warranty, then Ford dealerships would properly provide warranty coverage for covered all parts, and consumers would not have to pay out of their own pocket for said repairs.

46.    Furthermore, as a result of Ford's intentional failure to cover the transmission in Class Vehicles for the duration of the California Emissions Warranty's period, Plaintiff and the Class members were damaged at the time they purchased or leased a Class Vehicle. Specifically, when Plaintiff and the Class members purchased or leased a Class Vehicle, they received a vehicle with a less valuable warranty than the warranty they were entitled to because of the truncated transmission warranty.

47.     Ford's conduct violates California's unfair business practices statute, California Business and Professions Code sections 17200 *et seq.* (the "UCL").

48.     Plaintiff and other Class members have suffered damage as a result of Ford's wrongful, unfair, and unlawful conduct.

49.     Plaintiff's action seeks injunctive relief and declaratory relief compelling Ford to properly and fully identify that the transmission in Class Vehicles should be covered by the California Emissions Warranty, to identify the correct warranty period for the transmission, and to provide warranty coverage for the transmission pursuant to the California Emissions Warranty. The recovery of out-of-pocket expenses is restitution, not damages, and is ancillary to Plaintiff's primary goal of obtaining declaratory relief and/or requiring Defendant to properly and fully comply with the California Emissions Warranty as described herein.

50.     Plaintiff and other Class members still own Class Vehicles and in the future will need to repair or replace the transmission in their vehicle while it is still within the 15-year and 150,000-mile California Emissions Warranty period. At this time, with regard to the Class Vehicles, Ford is refusing to provide California Emissions Warranty coverage for the transmission.

## CARB DECLARATON

51.     The California Air Resources Board ("CARB") has provided a Declaration from Allen Lyons, who, at the time the Declaration was made, was the Chief of the Emissions Certification and Compliance Division of CARB regarding the California Emissions Warranty. The Declaration (hereinafter, the "CARB Declaration") was made "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration sets forth CARB's interpretation of certain of the foregoing CCR provisions, including how to define a "warranted part" for purposes of the California Emissions Warranty.

52.     The CARB Declaration states, in relevant part, that "warranted parts" under the California Emissions Warranty "include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

53.     As further alleged herein, Ford has systemically failed to follow the foregoing standards. Ford has engaged in a custom and practice of completely disregarding its obligations under the CCRs with respect to the California Emissions Warranty.

54.     Specifically, Defendant has an obligation under the California Emissions Warranty to identify all emissions-related vehicle components for which there should be warranty coverage. As a custom and practice, Ford has interpreted this obligation too narrowly, resulting in Ford wrongfully failing to identify numerous vehicle components as emissions-related vehicle components under the California Emissions Warranty, including, but not limited to, the transmission.

55.     The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions-related. According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-related part under the California Emissions Warranty law. This is not the standard that Ford has been using.

56.    Based on the CARB Declaration, Ford is required to provide coverage for all components whose failure: (1) affects any regulated emission from a motor vehicle; and (2) can or are required to illuminate the MIL, even if the primary function of the component is not emissions control. The California Code of Regulations mandates that the purpose of the MIL is to notify the driver of defective malfunctions of the OBDII monitored emissions systems of the vehicle; and/or failures which will cause a vehicle to fail a smog test as mandated by the California Health and Safety Code.

57.    Ford, as a matter of custom and practice, has failed to identify as covered components all components which can or are required to illuminate the MIL. Furthermore, Ford fails to identify all components whose failure affects a regulated emission.

58.    Ford has the ability to determine what component failures result in the MIL illuminating. Furthermore, California Code of Regulations Section 1968.2 specifically mandates that the MIL should not illuminate unless there is an emissions-related defect, and the regulations mandate that if a component's failure can or does cause the MIL to illuminate, coverage under the California Emissions Warranty follows. Yet, Ford does not provide the required coverage.

**THE TRANSMISSION IS AN EMISSIONS-RELATED PART**

59.    CARB has previously determined that a defective transmission is an emissions-related part entitled to extended coverage under the California Emissions Warranty.

60.    A public records request of CARB was served by Plaintiff's counsel in February of 2021. In response, CARB produced documents indicating that CARB had reviewed a customer complaint regarding a 2007 Nissan Altima PZEV vehicle with 122,232 miles. The customer complaint was regarding Nissan's denial of warranty coverage for a transmission replacement. The transmission needed to be replaced because of a malfunctioning pressure control solenoid,

indicating imminent transmission failure. The failure of the component illuminated the vehicle's MIL and also caused it to fail a smog check.

61.    In the documents, CARB staff stated that the Nissan transmission replacement should be covered under the California Emissions Warranty because a fault code was triggered which caused the MIL to illuminate. CARB noted that the implications of requiring transmission repair/replacement under the California Emissions Warranty could lead to strong opposition from other vehicle manufacturers that would have handled the situation in a similar manner. However, CARB's recommendations remained unchanged.

62.    Notably, CARB pointed out that administration of the PZEV warranty is incorrectly "based on a list of emission related components instead of a more comprehensive approach." Further, CARB noted that "by adhering to the list of emission components, dealerships may not be honoring warranty coverage for certain repairs that should be covered." The CARB memos also confirm that the PZEV warranty applies to "any defect in materials and workmanship which would cause the vehicle's onboard diagnostic indicator light to illuminate."

63.    The document indicated that CARB recommend CARB legal review Nissan's warranty language to determine if transmissions are covered, require Nissan to repair the transmission for the 2007 Altima under the California Emissions Warranty, issue a memo notifying all manufacturers of the requirements of the California Emissions Warranty and informing them of their obligations to meet these requirements, and require all manufacturers to have their dealerships reimburse customers for repairs that should have been covered under the California Emissions Warranty.

64.    This recommendation from CARB demonstrates that a transmission is an emissions-related part and should therefore be covered under the California Emissions Warranty, especially where it triggers a fault code and affects regulated emissions.

65.     Further, a defect which causes a vehicle to experience increased fuel consumption and decreased fuel efficiency is a defect which affects regulated emissions from a motor vehicle or engine which is subject to California emission standards. Vehicles are expected to emit carbon monoxide and other hydrocarbons to a varying degree, depending on usage and fuel consumption. All things being equal, a vehicle which has increased fuel consumption and decreased fuel efficiency due to a defect in the engine or transmission will emit more carbon monoxide and hydrocarbons per mile driven than the same vehicle without the defect. Any transmission malfunction in PZEV and SULEV vehicles, and all components related thereto, which causes a delay in shift time, a delay in acceleration, excessive transmission slipping, an increase in the engine's revolutions per minute beyond what is normal, a deviation from the vehicle's shift pattern as designed, or a decrease in fuel economy will increase greenhouse gas emissions, emissions regulated by 13 C.C.R. § 1961, and regulated by the federal government, as measured in grams of emissions per mile driven.

66.     Further, the defects which would cause the aforementioned conditions include but are not limited to a defect in the transmission valve body, a defect in a transmission clutch, a defect in a transmission shift solenoid, a defect in a transmission control module, a defect in numerous sensors installed in the transmission, and any other transmission defects which decrease fuel economy.

67.     As alleged herein, a part is considered a "warranted part" under California Code of Regulations Section 2035 if the part increases regulated emissions. Regulated emissions will increase on a per mile driven basis when a vehicle's fuel efficiency decreases, and its fuel consumption increases. Accordingly, a part is covered under the California Emissions Warranty if it contains a defect which results in increased fuel consumption and reduced fuel efficiency. A malfunction in the transmissions installed in Plaintiff's vehicle and in the Class Vehicles which causes the transmissions to slip, causes a delay in shift

time, a delay in acceleration, causes the engine's revolutions per minute to be higher than normal and/or results in a shift pattern that deviates from the shift pattern designed for the vehicle undeniably increases fuel consumption and regulated emissions.  It is axiomatic that when a vehicle has a shift time that is functioning outside of the certification standard and/or the transmission is slipping, the vehicle will have an improper shift pattern, increasing emissions and decreasing fuel efficiency.

68.    The defect or defects in the transmission in Plaintiff's vehicle resulted in excessive transmission slipping, a delay in shift time, a delay in acceleration, engine revolutions per minute that were higher than normal, and the transmission's shift pattern not performing as designed. All of these effects caused a decrease in fuel economy and an increase in regulated emissions. In a PZEV certified vehicle, a defect which results in increased fuel consumption and reduced fuel efficiency in a "Warranted Part" is entitled to 15 years/150,000 miles warranty coverage.

69.    Further, on information and belief, Ford's own documents, including Ford's OBDII summaries discussed below submitted to CARB as part of the vehicle certification process, identify the specific fault codes relating to the transmission that directly correlate with increased emissions and confirm an emissions-related defect. Also, as confirmed by the Ford's OBDII summaries, these fault codes cause the OBDII MIL to be illuminated. The fault codes identified in Ford's OBDII summaries confirm that there is a defect relating to an emissions related part.

70.    As explained above, all of the Class Vehicles are equipped with an OBDII onboard diagnostic system. The system uses sensors to gather data which is evaluated using OBDII fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered, identifying a defect which increases regulated emissions. When Ford seeks certification of vehicles for

distribution in California, Ford is required, pursuant to 13 CCR 1968.2, to provide

CARB with all of Ford's OBDII fault codes and the corresponding logic.

Accordingly, when a part that is, or should be, covered under the California

Emissions Warranty fails, triggering an OBDII fault code, it fails to perform as

described in the vehicle's application for certification. Upon information and

belief, these fault codes are submitted to CARB by Ford as "OBD2 Summary

Tables".  Ford submitted OBD2 Summary Tables or similar documents to CARB

for every Class Vehicle and for every model year that the vehicles were certified

for sale in California and that are at issue in this case.

71.    The OBD2 Summary Tables identify the Components/Systems

monitored by OBDII, the acceptable ranges relating to the data gathered, the

corresponding emissions fault codes and that the MIL will be triggered when a

defect is identified. The purpose of the OBDII system, as confirmed in the CCR, is

specifically to monitor emissions-related components. This is why Ford is

required to develop a compliant OBDII system which identifies emissions related

defects, triggering a fault code and a MIL. The fault codes are used to assist

technicians in repairing the vehicles, whereas the MIL is used to alert the driver of

a defect. This means that every defect that triggers the emissions fault codes

identified by Ford in the OBD2 Summary Tables and the MIL is, by definition, an

emissions-related defect. The OBD2 Summary Tables, among other documents,

identify the parts that have not already been identified as emissions-related parts

by Ford in its warranty books but which, when defective, can or do trigger an

emissions fault code and result in illumination of the MIL.

72.    Therefore, Ford is required to cover under the California Emissions

Warranty any defect that triggers a fault code identified by Ford in its OBD2

Summary Tables submitted to CARB or that should properly be identified on the

OBD2 Summary Tables, because such a defect affects regulated emissions.

CLASS ACTION COMPLAINT

73.     On information and belief, a defect in the transmission that triggers emissions fault codes in the OBDII system and identified on the OBD2 Summary Tables will also cause the MIL to illuminate.

74.     Furthermore, defects in the transmission will trigger multiple codes and will illuminate the check engine light.

75.     The foregoing framework and analysis addresses and precludes any potential "slippery slope" argument or concern that every vehicle part could potentially be "emissions-related." This litigation is not dependent on the assertion that "emissions-related parts" are defined as every part in the OBDII system. Rather, this litigation asserts that there should be California Emissions Warranty coverage, at the very least, for the parts, components, or systems whose defects trigger fault codes identified on the OBD2 Summary Tables and cause the MIL to be illuminated. This includes the transmissions installed on Class Vehicles. This is because said parts undeniably are "emissions-related" and fail in a manner that increases regulated emissions.

76.     Ford knows which fault codes these are because Ford is required to provide to CARB all the fault codes that trigger a MIL and the specific emissions-related conditions that trigger the fault codes as set forth in the OBD2 Summary Tables. Further, as confirmed in the CARB Declaration, emissions-related parts include any components that "can" or are required to illuminate the MIL in the event of a malfunction, even if the primary function of the component is not emissions control.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

77.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

78.     Plaintiff brings this action on her own behalf, as well as on behalf of all Class members similarly situated, pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4).

79.     Plaintiff reserves the right to redefine the Class and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

80.     On information and belief, Ford's California Emission Warranty applies to vehicles purchased and registered in States which, in the year the vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States," namely, States that have adopted California's Low-Emission Vehicle (LEV) criteria pollutant and greenhouse gas (GHG) emission regulations and Zero Emission Vehicle (ZEV) regulations under Section 177 of the Clean Air Act, 42 U.S.C. §7507).

81.     Defendant's emissions warranty representations arise out of California law that Defendant has chosen to apply outside of California to the vehicles in the States listed. Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Classes in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

82.     Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of California in the States covered by the Reg. 177 Class and Subclass. As Defendant seeks to apply the California Emission System Warranty to members of the Classes and vehicles in the listed States outside of California, members of the Classes in those States likewise should be included in a claim that seeks to vindicate their rights under that same warranty in California and should have the ability to have their rights under that warranty asserted in California and pursuant to California law.

83.     Ford's own express application of the California Emissions Warranty constitutes a sufficient connection between California and out-of-state potential Class members. Further, Ford's misconduct, namely, Ford's failure to identify all emissions-related warranted parts to CARB, a California regulator, occurred in California, and even out-of-state purchasers were harmed by Ford's conduct that occurred in California. Ford failed to disclose, in its submissions to CARB, the parts that are properly covered by the California Emissions Warranty, including, but not limited to, the transmission.

84.     As alleged herein, Ford is solely responsible for selecting and identifying to CARB all of the parts that should be classified as emissions warranted parts, and Ford failed to include the transmission and other components. Californians and out-of-state potential Class members in the additional States covered by the California Emissions Warranty suffered an identical harm – they were forced to pay the costs of transmission diagnosis, repair, or replacement, which should have been covered under the California Emissions Warranty, and were provided with warranties which were less valuable than the warranties they were legally entitled to at the time they purchased or leased their Class Vehicle. Under these unique circumstances, California has the greater interest in applying California's consumer laws to enforce compliance with the California Emissions Warranty than the other States have in using their consumer laws to enforce the same Regulation. California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and regulations, and California has an interest in preventing illegal practices that involve breach of California emissions law that Defendant has chosen to invoke outside of California in the specific States covered. California also has a supreme interest in applying its own consumer protection laws in ensuring that the California Emissions Warranty is properly interpreted and applied wherever Ford has chosen to invoke it.

85.    Under the facts of this specific case, the law of California should be applied because California's interest would be more impaired if its consumer laws to enforce the California Emissions Warranty were subordinated to consumer laws of the other States to which Ford has chosen to apply the requirements of the California Emissions Warranty. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Classes identified herein. Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

86.    There is sufficient similarity among all the Class Vehicles and Ford's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California Emissions Warranty and the same requirements that Ford report all emissions-related defects to CARB pursuant to the CCR. Ford has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover transmissions in the Class Vehicles as required under the California Emissions Warranty and as described herein.

87.    Accordingly, Plaintiff's proposed Class and Subclasses consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of Class Vehicles and whose transmissions are not covered for 15-years or 150,000-miles (the "California Class").

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective transmissions which occurred outside of the Class Vehicle's powertrain warranty period but prior to 15-years or 150,000-miles (the "California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and whose transmissions are not covered for 15-years or 150,000-miles (the "Reg. 177 Class").

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and who have paid for repairs and parts pertaining to defective transmissions which occurred outside of the Class Vehicle's powertrain warranty period but prior to 15-years or 150,000-miles (the "Reg. 177 Out-of-Pocket Subclass").

> Excluded from the Classes and Subclasses are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

88.     There are common questions of law and fact as to members of the Class and Subclasses that predominate over questions affecting only individual members, including, but not limited to:

(a)     Whether Ford has failed and is failing to acknowledge that the transmission installed in the Class Vehicles should be covered under the 15-year, 150,000-mile California Emissions Warranty, pursuant to California law;

(b)     Whether Fords failure to comply with the California Emissions Warranty by failing to provide a 15-year, 150,000-mile California Emissions Warranty for the transmissions installed in the Class Vehicles damaged Class members when they purchased or leased a

Class Vehicle with a less valuable warranty than they were entitled
to;

(c)     Whether Ford has engaged in and is engaging in a systematic
business practice of failing to identify that the transmission installed
in the Class Vehicles should be covered under the 15-year, 150,000-
mile California Emissions Warranty, pursuant to California law;

(d)     Whether Ford's conduct is an unlawful and unfair business practice
in violation of California Business & Professions Code section
17200, *et seq*.;

(e)     Whether Plaintiff and Class members are entitled to declaratory and
injunctive relief regarding Ford's failure to identify that the
transmission installed in the Class Vehicles should be covered under
the 15-year, 150,000-mile California Emissions Warranty, pursuant
to California law;

(f)     The appropriate remedy for Ford's violations of California law.

89.     There is a well-defined community of interest in the litigation and the
Class members are readily ascertainable:

(a)     Numerosity: The Class members are so numerous that joinder of all
Class members would be unfeasible and impractical. The
membership of the entire Class is unknown to Plaintiff at this time;
however, the Class is estimated to be greater than one hundred (100)
individuals and the identity of such membership is readily
ascertainable by inspection of Defendant's records.

(b)     Typicality: Plaintiff is qualified to, and will, fairly and adequately
protect the interests of each Class member with whom he has a well-
defined community of interest, and Plaintiff's claims (or defenses, if
any) are typical of all Class members as demonstrated herein.

(c)    <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any Class member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

(d)    <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

**TOLLING OF THE STATUTE OF LIMITATIONS**

90.    Ford has engaged in misleading and dishonest conduct relating to its failure to identify all of the parts, including the transmission, that should be covered pursuant to the California Code of Regulations regarding the California Emissions Warranty. Despite acting diligently, Plaintiff and Class members lacked the resources and had no realistic ability to identify the specific parts that should have been covered. Plaintiff and Class members cannot be reasonably expected on their own to learn or discover what parts should be covered under the California Emissions Warranty. Therefore, the discovery rule is applicable to the claims

1   asserted by Plaintiff and Class members, and the statute of limitations for bringing

2   the claims set forth herein should be tolled.

3       91.    Ford has actual and constructive knowledge that it is violating

4   California law by failing to identify all of the parts that should be covered under

5   the California Emissions Warranty. Ford has concealed from Plaintiff and Class

6   members that Ford is violating California law as set forth herein. Any applicable

7   statute of limitation is tolled by Ford's wrongful conduct set forth herein, and Ford

8   is estopped from relying on any statute of limitation because of its conduct as set

9   forth herein.

### FIRST CAUSE OF ACTION

10

### Violation of California Unfair Competition Law

11

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

12

### By Plaintiff, the California Class, and the Reg. 177 Class Against All

13

### Defendants

14

15      92.    Plaintiff re-alleges and incorporates by reference each allegation set

16  forth above.

17      93.    California Business and Professions Code section 17200, *et seq.* (the

18  "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."

19  Ford has committed acts of unfair competition proscribed by the UCL, including

20  the acts and practices alleged herein.

21      94.    The UCL imposes strict liability. Plaintiff need not prove that Ford

22  intentionally or negligently engaged in unlawful or unfair business practices –

23  only that such practices occurred.

24      95.    Ford is a "person" as defined by Business & Professions Code §

25  17201.

26      96.    As a direct and proximate result of Ford's acts and practices in

27  violation of the UCL, Plaintiff and members of the California Class and the Reg.

28

177 Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

## Unlawful Prong

97.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

98.    The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

99.    Ford's conduct is unlawful because it violates the California Code of Regulations, including the requirement under the California Code of Regulations, by failing to provide coverage under the California Emissions Warranty.

100.    Ford's conduct violates California Code of Regulations section 1962.1, 2037(c) and 2038(c) because Ford fails to identify the transmission as a part that should be covered under the 15-year/150,000-mile California Emissions Warranty.

101.    Ford's conduct is unlawful because it fails on a systemic and class wide basis to provide coverage for transmissions installed in the Class Vehicles for 15-years or 150,000-miles, as required pursuant to CCR Sections 1962.1, 2035, 2037, and 2028.

102.    Ford's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## Unfair Prong

103.    An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An

act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory, or regulatory provisions. Ford's conduct violates all of these definitions.

104.   As alleged above, Ford engages and has engaged in a systematic business practice of failing to identify for consumers and its factory authorized repair facilities that the transmissions installed in the Class Vehicles are covered by the California Emissions Warranty. Ford does this in an effort to reduce the amount of money that Ford spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If Ford complied with California law and properly identified that the transmission installed in the Class Vehicles should be identified as covered under the 15-years, 150,000-miles California Emissions Warranty, then Ford dealerships would properly provide warranty coverage for said parts.

105.   Further, Ford's conduct is unfair because it refuses to provide warranty coverage for transmissions installed in the Class Vehicles pursuant to the California Emissions Warranty for 15-years or 150,000-miles for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 15-year 150,000-mile California Emissions Warranty, or that the public is being provided with a warranty that is less valuable than the warranty they are legally entitled to at the time of purchase or lease of their Class Vehicle. Plaintiff and members of the Class have wrongfully been denied warranty coverage at service centers throughout California and have suffered injury in fact and a loss of money or property as a result of Ford's unfair business acts and practices as set forth in detail.

106.   Ford's failure to properly identify that transmissions installed in Class Vehicles should have been covered under the 15-year, 150,000-mile California Emissions Warranty is a uniform and systematic statewide business practice on

1    the part of Ford to minimize the amount of money that Ford has to pay out in

2    warranty claims. This conduct violates California law.

3         107.    All of the acts and practices of Ford as described in this complaint

4    constitute "unfair" business acts and practices. A business act or practice is

5    "unfair" under the UCL if the reasons, justifications, and motives of the alleged

6    wrongdoer are outweighed by the gravity of the harm to the alleged victims.

7    Plaintiff has suffered injury in fact and a loss of money or property as a result of

8    Ford's unfair business acts and practices as set forth herein in detail. It is

9    Plaintiff's information and belief that Class members have also suffered injury as

10   a result of Ford's wrongful conduct.

11        108.    As a direct and proximate result of Ford's acts and practices in

12   violation of the UCL, Plaintiff and members of the Class have paid out of pocket

13   to repair or replace emissions components that should have been covered by Ford

14   under the 15-year 150,000-mile California Emissions Warranty. Forcing

15   consumers to pay out of pocket to repair or replace vehicle components that

16   should be covered under warranty is clearly unfair.

17        109.    As a direct and proximate result of Ford's acts and practices in

18   violation of the UCL, Plaintiff and members of the Class have purchased or leased

19   Class Vehicles which provided inadequate, truncated, and less valuable warranty

20   coverage to the transmission than they were legally entitled to, as alleged herein.

21   Failing to provide customers with California Emissions Warranty coverage for

22   transmission defects in Class Vehicles which increase regulated emissions, in

23   violation of the CCR, is clearly unfair.

24        110.    Ford's conduct does not benefit consumers or competition. Plaintiff

25   and Class members could not reasonably avoid the injury each of them suffered or

26   will suffer, which injury is substantial. Ford's conduct only benefits Ford, by

27   enabling Ford to avoid having to pay warranty claims for defective transmissions

28

in Class Vehicles which should be covered by the 15-year 150,000-mile California Emissions Warranty.

111.   The gravity of the consequences of Ford's conduct as described above outweighs the justification, motive, or reason and therefore, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

112.   Ford's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

113.   To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Ford's justification and motives for its conduct, and as to the impact of Ford's conduct on Plaintiff and Class members.

114.   Ford's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Ford as follows:

1.     For an order certifying this case as a class action, appointing Plaintiff as the representative of the Classes and Subclasses, and appointing counsel for Plaintiff as Class Counsel;

2.     That the Court declare, adjudge, and decree that Ford is financially responsible for notifying all Class members about the wrongful conduct set forth

herein; that Ford's conduct as alleged herein violates the California Emissions Warranty laws because Ford has, among other things, used, and continues to use, the wrong or incorrect standards for identifying "emissions-related" parts under the California Emissions Warranty; Ford failed and is failing to properly identify and warrant under the California Emissions Warranty the transmission and/or all of the parts, components or systems that should have been properly covered for emissions-related defects as identified and limited as described herein, and/or that Plaintiff and the members of the Class are entitled to warranty coverage under California Emissions Warranty for transmissions in Class Vehicles under the California Emissions Warranty as described or defined herein; and an order requiring Ford to, *inter alia*, review its warranty books for all Class Vehicles and properly identify and warrant the transmission and, on a going forward basis, use the proper standard for determining whether a part is "emissions-related" under the California Emissions Warranty;

3.    That the Court declare, adjudge, and decree that Ford is responsible for notifying all Class members about the wrongful conduct set forth herein;

4.    That the Court declare, adjudge, and decree that Ford's failure to identify and warrant transmission in Class Vehicles pursuant to the California Emissions Warranty constitutes an unfair and unlawful business practice in violation of California Business and Professions sections 17200, *et seq.*;

5.    For declaratory relief pursuant to 28 U.S.C. section 2201 that Ford is in violation of, and must comply with, the California Emissions Warranty, namely, that Ford, *inter alia*, identify and cover the transmission in Class Vehicles under the California Emissions Warranty;

6.    For an order declaring and enjoining Ford from further unfair and unlawful distribution, sales, and lease practices and compelling Ford to properly and fully identify that transmission in Class Vehicles is covered pursuant to the California Emissions Warranty. Further, Ford will provide restitution for amounts

wrongfully paid by Plaintiff and Class members relating to these repairs which should have been covered by Ford under the California Emissions Warranty, as well as the amount by which consumers overpaid for the purchase or lease of their vehicle as a result of the truncated and noncompliant warranties provided to them at the time of purchase or lease;

7.     For an award to Plaintiff and the Out-of-Pocket Subclass members of any repair costs they are owed;

8.     For the appointment of a receiver, as necessary, to receive, manage and distribute any and all funds from Ford and determined to have been wrongfully acquired by Ford as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

9.     For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

10.    For an award of attorneys' fees and costs, as otherwise allowed by law;

11.    For an award of pre-judgment and post-judgment interest;

12.    For leave to amend the Complaint to conform to the evidence produced at trial; and,

13.    For all other relief as may be appropriate under the circumstances.


Dated: June 14, 2022                    Respectfully submitted,

                                        **POMERANTZ LLP**
                                        **THE LAW OFFICE OF ROBERT STARR**
                                        **FRONTIER LAW CENTER**

                                        By:_____/s/ Manny Starr_____
                                              Jordan L. Lurie
                                              Ari Y. Basser
                                              Robert L. Starr
                                              Manny Starr
                                              *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT